# William A. Springer's Appeal.

1. Where a testator devised a life estate in a farm to his widow and in a subsequent clause of his will devised the remainder in fee to their minor son and in an intermediate clause of his will provided that upon the son's arriving at the age of twenty-one he should have the refusal of renting said farm from his mother by paying her one-half of everything raised on the farm; the acceptance of the farm by the son under the terms of the will does not determine the life estate of the widow in the farm, nor is the estate of the son arising from the acceptance of the farm merged in the fee.

2. The widow and son in such case stand in the relation of landlord and tenant, and all the remedies incident to or springing out of that relation both at the common law and by statute attach.

3. The widow's share of the production of the farm is not a charge on it, and the Orphans' Court has no jurisdiction to enforce the payment of its value by the son.

November 9th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Allegheny county:* Of October and November Term, 1885, No. 207.

Appeal of William A. Springer from the decree of said court that he pay to Nancy Springer the sum of $3,978.50, being the cash value of Mrs. Nancy Springer's share of production for six years of farm devised by will of decedent to William A. Springer less admitted credit of $1,000 and cost.

The following are the facts in the case as appears from the statement filed by the Court, HAWKINS, P. J.:

This is a proceeding instituted on behalf of Nancy A.

Springer, widow, to enforce certain alleged charges on farms devised to Joseph Springer, Jr., Henry Springer, William A. Springer and John Springer. The respondents demurred; their demurrers were overruled, and thereupon answers were filed, and a large amount of testimony was taken.

The *prima facie* case made by the evidence of petitioner; the defence made by respondents; the rebutting evidence adduced by the petitioner, and the finding of facts by the Court will be briefly stated: [The facts not applicable to the case of William A. Springer are omitted.—REP.]

Joseph Springer died in 1861, testate, seized of about 1,000 acres of land, and leaving to survive him a widow, Nancy Springer (the present petitioner) and ten children, viz.; John, Nancy Jane (afterward married to Donaldson), Henry, Joseph, George, Horace (an idiot), Ethaline Morrow, Mary A. Bailey, and William A. Springer, a minor.

By his will he made the following (among other) provisions:

" Again, to my wife, Nancy, I allow the use of the farm on which I now live, during her natural life, for which she is to support my two sons, Horace and William A., and when the said William A. Springer arrives at the age of twenty-one years, he is to have the refusal of renting the farm from his mother, by paying to her one half of every thing that is raised on the farm; also, to be equal shares with her in supporting my son Horace. At the death of my wife, I bequeath the farm on which I now live to my son, William A. Springer, binding him to take good care of my son Horace during his natural life."

The foregoing constitute the only provisions made by testator for his widow; it is not claimed that she has any other estate. The petitioner is now 80 years of age, feeble in body and with mind impaired. See charges:

That William A. Springer, on attaining his majority in 1868, elected to take the home farm, subject to the terms of the will; that she estimates the value of her share of the yield and produce of said farm at $1,000 per annum; whereas her said son had paid her in groceries, flour and provisions, not exceeding $1,000 all told. That said Horace, owing to his mental condition and the failure of William to provide for him, had been wholly dependent on her for his care and support, and that she estimates the amount due her from William on that account to be $4,000.

From the time of Wm. A. Springer's election to take the farm in 1868 until 1880, his mother kept house for him. In 1879 or 1880 he notified her that he was desirous of getting married, but that he would not do so unless she left the house. She at

once agreed to go, and shortly afterward moved into a small house, which he built for her on the farm, where she remained with her son Horace, with the exception of two or three short intervals, until the fall of 1884. William undertook to supply her with necessaries. On April 28th, 1883, William induced his mother to sign an agreement which purports to release all claim on the part of Mrs. Springer under her husband's will; and in consideration thereof William undertakes to allow his mother to occupy the little house, keep her in flour and meat, and keep a cow for her if she wishes one, pay all taxes and keep up repairs, and pay her $36 a year during her life, with a right of rescission of the agreement after thirty days' notice. The supplies furnished by William gradually decreased in quantity until his mother was compelled to appeal to the neighbors for help, and those to whom she appealed saw every evidence of destitution. She had previously run bills at the store as long as her credit lasted, was then sued, and attachments served on William and Henry. William did not only not supply her with a comfortable support, but was abusive in language and threatening in manner.

The article with William was read to Mrs. Springer in an ordinary tone of voice. One of her sons testified that her hearing then was no better than now; if so, there is every reason for believing that she did not properly and fully understand the agreement. While on the witness stand it was difficult to make her understand what was said. The contract is unconscionable.

The productive value of William's farm in grain and hay was about $1,659.50 per annum, and as he pleads the statute of limitations as against his mother's claim, the value of her share for six years would be $4,978.50, less credit admitted of $1,000.

HAWKINS, P. J., filed an opinion which was *inter alia* as follows:

But the interest which she has in the farms of Henry and William A. Springer, arises under the will of her deceased husband; is a charge upon them: Buchanan *v.* Duncan, 40 Pa. St., 82; and consequently within the jurisdiction of this Court.

The principle upon which the decision on the merits of these claims should be rested, can be best stated in the language of Mr. Justice Story. [1 Eq. Jur., § 331.]

. . . . . The proper jurisdiction of Courts of Equity is to take every one's act according to conscience, and not to suffer undue advantage to be taken of the strict forms of law, or of positive rule. Hence it is that even if there be no proof of

fraud or imposition, yet if upon the whole circumstances, the contract appears to be grossly against conscience, or grossly unreasonable and oppressive, Courts of Equity will sometimes interfere and grant relief, although they certainly are very cautious of interfering, unless upon strong circumstances. But the mere fact that the bargain is a very hard or unreasonable one, is not generally sufficient, *per se,* to induce these courts to interfere, and indeed it will be found that there are very few cases not infected with positive or actual fraud in which they do interfere, except where the parties stand in some very peculiar predicament, and in some sort under the protection of the law from age, or character, or relationship."

If this principle be applied here, the agreement relied on by William A. Springer must be disregarded. "Upon the whole circumstances," it is grossly against conscience. The petitioner against whom it is pleaded was impaired in body and mind by reason of age when it was executed; it took away from her a competence which was her sole reliance, and left her insufficient to supply common necessaries of life. Her relationship to these respondents imposed upon them a legal as well as a natural duty to maintain her in comfort; and public policy will not permit that they shift their burden upon the poor rates.

Mrs. Springer, therefore, stands in a "very peculiar predicament and in some sort under the protection of the law from age" as well as from "relationship" to these respondents, and is entitled to relief.

The Court accordingly entered the following decree: That William A. Springer pay to Nancy Springer the sum of $3,978.50, being cash value of Mrs. Nancy Springer's share of production for 6 years of farm, devised by will of decedent to William A. Springer, less admitted credit of $1,000 and costs.

Whereupon the said William A. Springer took this appeal and filed *inter alia* the following assignments of error:

The Court erred in entertaining jurisdiction of the petition and of the matters and things therein set forth.

The Court erred in not sustaining and in dismissing appellant's first exception, to wit: The judge erred in finding that the provision in the will of decedent as to respondent, to wit: "Again to my wife Nancy I allow the use of the farm on which I now live during her natural life, for which she is to support my two sons, Horace and William A.; and when the said William A. arrives at the age of twenty-one years he is to have the refusal of renting the farm by paying to her one-half of everything that is raised on the farm; also, to be equal shares with her in supporting my son Horace. At the death

of my wife I bequeath the farm on which I now live to my
son William A. Springer, binding him to take good care of my
son Horace during his natural life," was a legacy to petitioner
charged on the land devised to William A. Springer, respond-
ent, and in entertaining jurisdiction of the petition.

The Court erred in not sustaining and in dismissing appel-
lant's third exception to the decree, to wit: "The judge erred
in finding that the article with William was executed by peti-
tioner without her fully and properly understanding the same,
and that the contract was unconscionable."

· The Court erred in not sustaining and in dismissing appel-
lant's fifth exception, to wit: "The judge erred in disregarding
the agreement set up by respondent in his answer dated April
28th, 1883."

*John S. Ferguson* for appellant.—The Court below held that
the interest which Nancy Springer had in the farm occupied
by William A. Springer, was a charge upon the land, relying
upon the authority of Buchanan *v.* Duncan, 40 Pa. St., 82.

· The facts of that case differ widely from the one at bar, and
besides it was an action of ejectment brought after the death
of the widow, and the Court did not attempt to determine
what kind of remedy the widow would have had to enforce
the provisions made for her in the will.

It has been settled in this state by an unbroken line of deci-
sions that in order to charge lands devised, with the payment
of a legacy, it must appear by direct expression, or plain im-
plication, that such was the intention of the testator: Brandt's
Appeal, 8 Watts, 198; Montgomery *v.* McElroy, 3 W. &. S., 370;
Hackadorn's Appeal, 1 Jones, 86; Wright's Appeal, 2 Jones,
256; Hamilton *v.* Porter, 63 Pa. St., 332; Buchanan's Appeal,
72 Id., 448; Cable's Appeal, 91 Id., 327; Walter's Appeal, 95
Id., 305; Haworth's Appeal, 9 Out., 362.

There is no charge in this will. The widow was not bound
by its terms to rent the farm to William for the term of her
natural life. She was not prevented by the will from requir-
ing of him the usual covenants for the payment of the rent.
Whether she required such covenants or not, if by his accept-
ance he became the tenant, the law afforded her ample
remedies. She could have distrained for the rent. "In
order to justify a distress the rent reserved need not be
payable in money; it may be payable in an article of com-
merce, as in iron or wheat, or by service :" Jones *v.* Gundrim,
3 W & S., 531; Rheinhart *v.* Olwine, 5 W. & S., 163; Sheaffer
*v.* Sutton, 5 Binn., 228; Frye *v.* Jones, 2 R. 11.

She could have dispossessed him for non-payment of rent
under the Act of Assembly.

But although the testator in the will uses the expression, "That William is to have the refusal of renting the farm," it is by no means clear that these words upon his acceptance would amount to a lease. If he accepted he was bound to render to his mother a moiety of everything that was raised on the farm; in other words, for his labor he was to have a moiety of the crop. Under such a contract his mother, as the landlord, would naturally regard her share of the specific crop as her own. She and William would be tenants in common of each crop until it was divided: Caswell v. Districh, 15 Wend, 379; Putnam v. Wise, 1 Hill, 244.

2. The finding of the Court is simply that the contract of April 28th, 1883, is unconscionable.

It is not alleged that any fraud, artifice or deceit was practiced by William A. Springer in the obtaining of this contract. It is respectfully submitted that in a Court of Equity, and the Orphans' Court is such a Court, the agreement ought not to have been stricken down. "Mental weakness not amounting to inability to comprehend the contract, when unaccompanied by evidence of imposition or undue influence furnishes no ground for equitable interference in setting aside an executed contract." Armon v. Stout, 42 Pa. St., 114.

"Equity will relieve against an improvident contract entered into by an aged man of enfeebled intellect where there is the slightest evidence of circumvention: Hetrick's Appeal, 58 Pa. St., 477.

Inadequacy of price is not fraud; it is only evidence of fraud; and an executed contract will not be set aside for mere inadequacy of price: Davidson v. Little, 10 Harris, 245; Bierer's Appeal, 92 Pa. St., 265.

"To set aside a written instrument on the ground of fraud the evidence thereof must be clear, precise, and indisputable, and of that which occurred at the execution of the instrument:" Bierer's Appeal, 92 Pa. St., 265; Cummins v. Hurlbutt, 92 Id., 165.

*Erskin* (with whom was *Miller*), for the appellee.—The testator by express terms made the support of Horace and William A. a charge upon the lands in the hands of the widow, and beyond all question intended that the provisions for the widow in the event of William A. electing to take the farm when becoming of age should become a charge on the land.

The relation in which his wife stood to the testator and his property, and this appellant, favor this construction, and especially so as here the provision is made in lieu of dower.

This provision did not as contended by the appellee, raise the relation as landlord and tenant, as between the widow and

son. There was no contract relation as between them; she had no alternative but to comply with the terms of the will, on the election of William A. to take under its provisions, and he having accepted the devise on his arriving at age, struck down the widow's life interest and took the land subject to the provisions in favor of the widow, to wit, the payment to her out of the proceeds of the farm one half of such proceeds as they should arise from year to year. His interest at once arose on acceptance of the devise. There was a merger and he at once took title. In this view of the case, which we believe to be the only fair and proper construction to be put upon the will, William A. Springer could not alien the farm divested of this charge, but his alienee would take *cum onere*, and would be bound to pay the legacy as it would fall due, and this liability may be enforced in the Orphans' Court: Hoover *v.* Hoover, 5 Pa. St., 355; Lobach's Case, 6 Watts, 167; Mohler's Appeal, 8 Pa. St., 27.

The word "renting," used by the testator, does not import that the relation of landlord and tenant should exist, but rather strenghtens our position, for although the testator by his devise to the son and his election to take, struck down the widow's life estate, it imports rather that the thing to be paid was to be a charge on the land and to be paid out of the land.

She had under the provision of the will no right of distress, nor could she dispossess by proceedings in ejectment, nor would trover lie: Ream *v.* Harnish, 45 Pa. St., 376; Crann *v.* Bleakney, 9 Watts, 19; Lehe *v.* Taylor, 90 Pa. St., 383.

If a confidence is reposed and that confidence is abused Courts of Equity will grant relief: Story's Equity Jur., Vol. I, §§ 307, 308; Murlock *v.* Murlock, 31 N. J. Eq., 594; Comstock *v.* Comstock, 57 Barb., 454; Bispham's Eq., §§ 232, 235.

He who bargains as a matter of advantage with a person placing confidence in him is bound to show that a reasonable use has been made of that confidence: Darlington's Appeal, 86 Pa. St., 518; Story's Equity Jur., § 312; Highberger *v.* Stiffler, 21 Maryl., 352; Martin *v.* Martin, 1 Heiskill, 654; Harvey *v.* Mount, 8 Bevan, 439; Darlington's Appeal, 86 Pa. St., 878; Todd *v.* Grove, 33 Md., 188; Liddel's Ex'r, *v.* Starr, 20 N. J. Eq., 275; Comstock *v.* Comstock, 57 Barb, 454; Dalton *v.* Dalton, 14 Nevada, 419; Winelock *v.* Winelock, 31 N. J. Eq., 594; Hetrick's Appeal, 58 Pa. St., 479; Adams' Equity, 184 and note.

As to the question of jurisdiction, we think that even if the provisions of the will of decedent were a mere personal charge, and not a charge on the land, that the Orphans' Court, in proceedings of legatee against devisee, has jurisdiction. While it has exclusive jurisdiction under the Act of 1834, where a

legacy is charged upon the land; it has also concurrent jurisdiction with the Common Pleas in cases where there is a mere personal liability on the part of a devisee to pay a legacy. Dundas's Appeal, 73 Pa. St., 474.

Mr. Justice CLARK delivered the opinion of the Court January 4th, 1886.

This is a proceeding, instituted in the Orphans' Court of Allegheny County, on behalf of Nancy A. Springer, widow of Joseph Springer, deceased, in part, to enforce payment of a certain alleged legacy, which it is claimed is charged on the lands of William A. Springer, under the last will and testament of his father, the said Joseph Springer, deceased. The clause of the will out of which this contention arises is as follows, viz.: —

"Again, to my wife Nancy, I allow the use of the farm on which I now live, during her natural life, for which she is to support my two sons, Horace and William A. Springer."

"And when the said William A. Springer arrives at the age of twenty-one years, he is to have the refusal of renting the farm from his mother, by paying her one half of everything that is raised on the farm; also, to be equal shares with her in supporting my son Horace."

"At the death of my wife, I bequeath the farm on which I now live to my son, William A. Springer, binding him to take good care of my son Horace, for and during his natural life."

At the death of Joseph Springer, the father, December 6th, 1861, William A. Springer was still in his minority; he arrived at the age of twenty-one years in 1868, when he entered into the possession of the farm, and has ever since occupied it, under the terms expressed in the will.

Horace, it would seem, was, and still is, imbecile in intellect, and has been supported by his mother. The claim of the widow is for the one half of what has, during this period, been raised upon the farm, etc.

In order that the complainant, Nancy Springer, may have a decree in this case it must appear not only that she is a legatee under the will of Joseph Springer, deceased, but that her legacy, is, by the express provision of the will, or by plain implication, charged upon the lands of William A. Springer, the devisee.

The testator, in the first place, plainly gave to his widow a life estate in the land, and in a subsequent clause devised to William the remainder in fee. These provisions are clear and their effect is undisputed; it is the intermediate clause, out of which the present contention arises.

It is contended on the part of the widow, that if William,

when he arrived at lawful age, elected to take the farm under the terms of the will, the estate or title given him in this intermediate clause, being for the life of his mother, merged in the fee, which he held in remainder, that her life estate was thereby determined, and the title became vested in William absolutely, subject only to the charge of her "one half of everything raised on the farm." And further, that the terms of the will, specifically pointing out the land as the source of payment, make that payment to the widow by plain implication a charge on the land.

Upon a careful reading of this will, we have arrived at a different conclusion. We do not understand that the testator intended by this clause to carve from the widow's life estate, any additional interest in the land for William, or that the life estate should be determined, and the fee take effect, at any time anterior to the widow's death; the language of the will is, that William "is to have the refusal of renting the farm," which plainly implies a recognition of the continuance of the widow's title after the provision shall take effect; and this implication is greatly strengthened by the fact that he is to have the refusal of renting the farm "from his mother."

The testator intended, without doubt, just what he said, that William should occupy as a tenant under his mother, and that her estate in the land should continue through life. It is quite improbable, we think, that he should have meant that his wife, after her son's majority, would lose her management and control of the farm, or her right to regulate its production.

Under this clause, as we understand it, no additional beneficial interest in the land passed to William. He acquired under it a merely personal right or privilege, which the widow by her acceptance of the will, in a certain contingency, at the proper time, was bound to respect. The acceptance of the devise was an engagement on her part to comply with the provisions of the will respecting it; and in the event of her refusal she would, we think, have been liable in an action for the injury sustained. When William arrived at the age of twenty-one years, he exercised the option given him; he signified his willingness to take the farm on the terms of the will, and with his mother's approval entered into the possession, and conducted the operations of the farm. The relation of landlord and tenant thereafter subsisted between them—not under the will, perhaps, but by the agreement implied from the conduct of the parties, pursuant to its provisions. All the remedies incident to, or springing out of that relation, both at the common law and by statute, attached at the instant it existed, as in other cases. In the absence of any agreement otherwise, the tenancy was from year to year only, and if

[McKinley v. Peters.]

William, from indolence, want of capacity, or other cause, had failed to conduct the work of the farm from year to year in a reasonably successful manner, upon proper notice she would have had an undoubted right to resume the possession under the statute. It was competent, of course, for the parties, by writing, to provide for a term of years, and for the widow, in a reasonable way, to regulate the manner and extent of the cultivation, the kind of crops, to provide for the division of the products, and the delivery of her share. She was the landlord and her son the tenant, and their rights were regulated accordingly. As long as William, in carrying on the affairs of the farm, did his duty in a reasonable and substantial manner, he had a right to be retained as a tenant. If improperly excluded and denied his privilege, he had his remedy, but he had no present interest in the land under the will, during the lifetime of his mother.

These, as we understand this will, were the relative rights of the parties to this contest, and in this view of the case this proceeding in the Orphans' Court, as against Wm. A. Springer, cannot be sustained.

It is unnecessary to consider the other questions in the case.

The decree of the Orphans' Court as to William A. Springer, is therefore reversed, and the proceedings as to him are set aside at the costs of the appellee.

STERRETT, J., dissents.